VIRGINIA L. GALL, ADMX. v. PAULINE BEARDSLEY ET AL.

COURT OF COMMON PLEAS    LITCHFIELD COUNTY    FILE NO. 8069

Memorandum filed July 3, 1946.

*Charles P. Roraback,* of Torrington, for the Plaintiff.

*David Cramer,* of Litchfield, for the Defendants.

FITZGERALD, J.  The plaintiff is the administratrix upon the estate of her father, Herman F. Bohl, who died January 6, 1946.  This action is designed to determine whether a certain diamond ring belongs to the estate or to the defendant Pauline Beardsley, sister of the deceased.  Counsel are to be commended in having facilitated the problem of the court by agreeing upon most of the subordinate facts.

So far as is necessary for a determination of the question presented the facts upon which there is no dispute, and others deducible from the evidence, may be stated as follows:

1. The mother of the deceased died in 1938 and her diamond engagement ring became the property of her daughter, the defendant Pauline Beardsley, sister of the deceased.

2. Shortly thereafter Mrs. Beardsley gave the ring to the deceased who had the diamond reset in a man's gold band;

he wore the ring until the occasion hereinafter described; he cherished the ring dearly because the diamond had been his mother's.

3. At the time of his death on January 6, 1946, the deceased was not living with any member of his family; the immediate family consisted of his wife and two daughters; there was also a brother, and a sister, the defendant Pauline Beardsley.

4. To the defendant Lulu S. Murdick, at whose home the deceased took his meals for some time prior to his death, he said in substance on different occasions: "Give this ring to my sister if anything should happen to me."

5. To his sister, the defendant Pauline Beardsley, he said in substance on different occasions: "My family is never to have possession of this ring". (Parenthetically it is stated that the court finds that the deceased and his sister were always on the best of terms and that by "family" the deceased was referring to his wife and daughters).

6. To another person on the occasion of a Sunday dinner in New York in the autumn of 1944 he said in substance: "My sister is going to have this ring."

7. On the evening of January 4, 1946, following dinner at the Murdick home, the deceased became ill and lapsed into a state of unconsciousness until his death two days later.

8. Before the deceased died, and while he was unconscious, the defendant Lulu S. Murdick at whose home he was confined, and with the knowledge and acquiesence of her husband, the defendant Walter H. Murdick, removed the ring from the third finger of the deceased's left hand and delivered it over to the defendant Pauline Beardsley before the deceased expired.

9. In so doing the Murdicks were acting in good faith; they disclosed what they had done and the reason therefor to the plaintiff as daughter of the deceased.

10. Mrs. Beardsley has ever since retained possession of the ring although requested by the administratrix to hand it over as an asset of the estate of the deceased.

The question for determination is whether there has been a valid gift of the ring by the deceased to his sister. If there

has been this action fails. If there has not been the defendant Pauline Beardsley has agreed, through her counsel, to hand the ring over. This latter statement is expressly noted at this time in view of the character of the complaint which is one for conversion and not replevin. Since counsel have stipulated respecting the disposition of the ring in the event that the court concludes there was no valid gift, nothing further need be said beyond this reference to the state of the pleadings and the understanding of court and counsel.

The recital of facts discloses that the deceased became the sole and unconditional owner and possessor of his mother's ring upon the gift of it to him by his sister in 1938. The manner in which the sister acquired title to the ring after the mother's death and before giving it to her brother is not clear. But no question has been raised on this aspect and it is not disputed that the sister in 1938 turned over title and posses· sion of the original ring to the deceased who thereafter caused the diamond to be removed from its original setting and placed in a gold band adapted to his use. It is clear on the subordinate facts that it was his intention to continue in possession and be the sole owner of the ring until some time in the future. It is equally clear that he desired his sister to have the ring at a later time. The inference is inescapable that the deceased had in mind the contingency of his death as the line separating his possession and title from a conferred possession and title upon his sister. The inquiry then is whether the deceased has laid a sufficient foundation for a valid gift of the renovated ring to his sister under the law relating to gifts.

Gifts, other than those of a testamentary character, fall into one of two classes—inter vivos and causa mortis. Text writers agree that a particular gift under certain circumstances may possess some of the attributes of both classes. But we are not here concerned with subtle refinements of distinction. If the deceased's arrangement respecting the ring can be said to come within either of the aforesaid classes of gifts the plaintiff ad-ministratrix fails in her action. For this reason the detailing of facts is of paramount importance in determining the conclu-sions of law to be reached.

Did the deceased effect a valid gift inter vivos? The subor-dinate facts require a negative answer. To constitute a gift of this character there are two essential requisites: "a delivery

of the possession of the property to the donee, and an intent that the title thereto shall pass immediately to him." *Guinan's Appeal,* 70 Conn. 342, 347; *Main's Appeal,* 73 Conn. 638, 640. The first requisite is not present. This is decisive of this phase of the case. Further language appearing in the opinion of *Main's Appeal,* supra—"It is not necessary that there should be a manual delivery of the thing given, nor that it should be made to the donee in person"—is not inconsistent with the requirement of the unity of delivery of possession and intent to pass title. As seen from the discussion in that opinion immediately following the last quotation, and cases cited, the statement is referrable only to the gift of money in a bank account by delivery of the deposit book to the donee.

Did the deceased effect a valid gift cause mortis? The subordinate facts require a negative answer. To constitute a gift of this character there are three essential requisites: "1. It must be made by the donor, in contemplation of the conceived approach of death. 2. It must be given to take effect only in case the donor dies. 3. And there must be a delivery of the subject of donation." *Raymond* v. *Sellick,* 10 Conn. 479, 484. Retention of possession of the ring by the deceased until he lost consciousness, regardless of what may have been his prior intention respecting possession and title in his sister, is deemed fatal to a valid gift of a causa mortis character. This aspect puts outside the pale the combined existence of all three requisites.

The conclusion of law is that the deceased did not effect a valid gift of the ring either inter vivos or causa mortis in favor of his sister, the defendant Pauline Beardsley. The surrounding circumstances and the language of the deceased in his lifetime suggest that he was attempting something in the nature of an oral testamentary gift of the ring in favor of his sister. This is of no consequence in legal contemplation. See *Daginella* v. *Second National Bank,* 106 Conn. 207.

The issues are found for the plaintiff. By agreement of counsel, noted supra, the judgment to be entered is for return of possession of the ring, and not for damages as in conversion. Costs attach as an incident.